IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

CARLA J. BOUNDS                                                                                        PLAINTIFF

VS.                                                              CIVIL ACTION NO.  2:12cv124 KS-MTP

CAROLYN W. COLVIN, Acting
Commissioner of Social Security Administration                                      DEFENDANT

ORDER PARTIALLY ACCEPTING AND MODIFYING
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, ETC.

This cause is before the Court on Complaint seeking judicial review of a final decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income. The Plaintiff has filed a Motion for Summary Judgment [13] and the Defendant has filed a Motion to Affirm the Commissioner's Decision [15].  Magistrate Judge Michael T. Parker has filed a Report and Recommendation herein [18].  The Defendant, Commissioner Colvin, has filed Objections to the Report and Recommendation of the Magistrate Judge [19] and a Reply to the Objections has been filed by Plaintiff [20].  The Court has considered the above documents and the record herein and the applicable law, and finds that the Report and Recommendation of the Magistrate Judge should be adopted, with certain modifications, for the reasons herein set forth.

**Procedural History**

Plaintiff applied for supplemental security income benefits ("SSI") under the Social Security Act on July 29, 2010, alleging disability as of July 28, 2010, due to chronic obstructive

1

pulmonary disease ("COPD"), asthma, chronic bronchitis, emphysema, staph infections, osteoporosis, arthritis in neck/shoulder, oxygen as needed, restless leg syndrome, and migraines. [9] at 160.[1]  Plaintiff's claims were denied initially and upon reconsideration; therefore, she requested a hearing. [9] at 38-39, 70-72.

On October 19, 2011, the hearing was convened before Administrative Law Judge ("ALJ") Nancy L. Brock.  The ALJ heard testimony from Plaintiff and Robert Walker, a vocational expert ("VE"). [9] at 17-37.  On October 28, 2011, the ALJ issued a decision finding that Plaintiff was not disabled. [9] at 40-56.  Plaintiff appealed, and on May 24, 2012, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. [9] at 4-7.

Aggrieved by the Commissioner's decision to deny benefits, Plaintiff filed a complaint [1] in this court on July 19, 2012, seeking an order reversing the Commissioner's final decision and awarding her benefits, or remanding the case to the Commissioner for further administrative action as directed by the court.  The Commissioner answered [8] the complaint denying that Plaintiff is entitled to any relief.  The parties having filed dispositive motions pursuant to the court's Scheduling Order [10], the matter is now ripe for decision.

**Medical/Factual History**

Plaintiff was forty-four years old at the time of the hearing before the ALJ on October 19, 2011. [9] at 20.  Her alleged onset disability date was July 28, 2010, when she stopped working

---

[1] For ease of reference and pursuant to the court's Scheduling Order [10], the administrative record is cited to herein by reference to the court docket number and docket page number in the federal court record (not the Administrative Record page number).

due to her condition. [9] at 160. Plaintiff has a high school education, attended community college for three semesters, and has past work experience as a police officer from 1993 to 2010. [9] at 21, 34, and 150. On August 5, 2008, Dr. Patricia Miller, Plaintiff's treating family physician, restricted Plaintiff from performing the annual physical tests required for the duties of her employment as a police officer due to a chronic lung condition with a history of sarcoidosis.[2] [9] at 318.

Plaintiff has a history of atelectasis[3] of the right lung and nodular densities in the right lung. The medical records reveal that her atelectasis and lung nodules remained relatively stable in 2008 and 2009. [9] at 252-53. In May, 2010, Plaintiff had a CT scan of her chest that revealed new areas of mild atelectasis in the right lung. Also, Plaintiff had a stable and benign appearing nodule in her right lung. [9] at 250-51. In May, 2011, Plaintiff had another CT scan of her chest that revealed her atelectasis and lung nodules remained relatively stable. [9] at 302.

On May 11, 2010, Plaintiff underwent pulmonary function testing (spirometric test)[4] performed by Dr. Gardner Fletcher, a pulmonologist.[5] This testing revealed that Plaintiff's one-

---

[2] Sarcoidosis is a chronic, progressive, systemic granulomatous reticulosis of unknown etiology, characterized by hard tubercles in almost any organ or tissue. Dorland's Illustrated Medical Dictionary 1599 (29th ed. 2000).

[3] Atelectasis is the incomplete expansion of a lung or a portion of a lung. Dorland's Illustrated Medical Dictionary 166 (29th ed. 2000).

[4] This test measures the air inhaled into and exhaled from the lungs. Dorland's Illustrated Medical Dictionary 1680 (29th ed. 2000).

[5] The results of the pulmonary function testing are technical, but they are critical to the analysis of this matter. Their significance is discussed under issue number one.

second forced expiratory volume ("FEV1") value[6] was severely reduced at 1.30 or 44% of the predicted value.[7] [9] at 248-49.

On September 22, 2010, Plaintiff underwent another spirometric test performed by Dr. Charles Parkman, a pulmonologist. Plaintiff's FEV1 value was 1.13 or 39% of the predicted value. Dr. Parkman, however, did not find the test to be reliable: "I am not certain if this is a lack of effort or what, but I do not feel like the current numbers are that reliable." [9] at 315-17.

On October 4, 2010, Dr. Parkman performed another spirometric test on Plaintiff. Plaintiff's FEV1 value was 1.59 or 54% of the predicted value. Following the first test, Plaintiff was administered a bronchodilator,[8] and her FEV1 value was 1.28 or 43% of the predicted value.

On November 29, 2010, Dr. Parkman evaluated Plaintiff and assessed her as having mild to moderate COPD. Her condition was attributed to her long-term use of tobacco. Dr. Parkman also noted that the "[s]pirometric studies actually show a pattern of restriction of a moderate degree, but I really question the validity of the study." [9] at 308-09.

On May 13, 2011, Dr. Parkman again performed a spirometric test that revealed a FEV1 value of 1.10 or 48% of the predicted value. Dr. Parkman, however, did "not think the effort was optimal." [9] at 305-07.

In addition to pulmonary conditions, Plaintiff has a history of complaints regarding pain

---

[6] This is the volume (liters) that has been exhaled at the end of one second of forced expiration.

[7] The predicted value is the volume that a normal, healthy patient would be expected to exhale if he/she had characteristics (height, age, weight, and sex) similar to the actual patient.

[8] A bronchodilator is an agent that causes expansion of the lumina of the air passages of the lungs. Dorland's Illustrated Medical Dictionary 166 (29th ed. 2000).

in her neck and extremities. On September 14, 2010, Plaintiff was evaluated by Dr. Brian Trussell with the Interventional Spine and Sports Institute. Dr. Trussell reported tenderness along the mid to lower cervical region, pain along the upper trapezius, and pain along the right medial scapular border. The Spurling's maneuver[9] revealed lower cervical pain and upper trapezius pain but no nerve root pain, resulting in a negative test result. She had normal sensation in her left arm and in her legs but had patchy sensory changes in her right arm. [9] at 277-78.

The strength testing results indicated that her manual motor strength was 5/5 and normal in her left arm and legs and was 4/5 in her right arm likely due to pain. Her reflexes were full and symmetric in her extremities. She was diagnosed with mid to lower cervical internal disc disruption likely at the C6/7 disc level based on her pain pattern. Dr. Trussell recommended she participate in physical therapy for stabilization exercises, which she elected to defer. Dr. Trussell prescribed three weeks of Relafen.[10] [9] at 277-78.

On October 14, 2010, Dr. Trussell administered a right C6 epidural steroid injection at the C5/6 and C6/7 disc levels. On October 28, 2010, Dr. Trussell reevaluated Plaintiff, and she reported being somewhat satisfied with her current level of improvement. The physical examination revealed a normal range of motion in the joints of her arms and legs without evidence of instability. She had tenderness along the left patellar tendon and the left femur at the

---

[9] This maneuver involves turning and applying pressure to a patient's head in order to assess nerve root pain.

[10] Relafen is a nonsteroidal anti-inflammatory drug used in the treatment of arthritis. Dorland's Illustrated Medical Dictionary 1175, 1555 (29th ed. 2000).

5

knee. She had slightly decreased pinprick sensation in the first through third digits in her hands. Her manual motor testing was normal as to her extremities. She had tenderness along the cervical region, but no localized pain. Dr. Trussell diagnosed Plaintiff with midline lower cervical pain consistent with lower cervical disc disruption with 50% relief following a right C6 epidural steroid injection with signs and symptoms consistent with carpal tunnel syndrome and left patellar femoral syndrome. Dr. Trussell recommended a second steroid injection, the use of nighttime wrist splints for the carpal tunnel syndrome, and an x-ray of her left knee. There is no evidence that Plaintiff followed these recommendations. [9] at 275-78.

On August 27, 2010, Dr. Robert Culpepper, a DDS medical consultant, completed a Physical Residual Functional Capacity Assessment. Dr. Culpepper found Plaintiff to have medically determinable impairments. Dr. Culpepper found that Plaintiff was able to lift and carry twenty pounds occasionally and ten pounds frequently, stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday, sit for a total of about six hours in an eight-hour workday, and perform unlimited pushing and/or pulling other than as shown for lifting and carrying. Dr. Culpepper provided postural restrictions limiting Plaintiff to no climbing of ladders, ropes, or scaffolds and to the occasional performance of balancing, stooping, kneeling, crouching, crawling and climbing of ramps or stairs. However, no medical records generated or provided after August 27, 2010, were considered by Dr. Culpepper.

On October 25, 2010, Plaintiff's treating physician, Dr. Miller, completed a questionnaire regarding the Plaintiff's impairments. [9] at 299-301. A detailed description of Dr. Miller's answers and the ALJ's analysis of Dr. Miller's answers is provided below.

**Burden of Proof**

In *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988), the Fifth Circuit detailed the shifting burden of proof that applies to the disability determination:

> An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act.  Once the claimant satisfies his initial burden, the [Commissioner] then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and therefore, not disabled.  In determining whether or not a claimant is capable of performing substantial gainful activity, the [Commissioner] utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f) (1988):
>
> > 1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
> >
> > 2. An individual who does not have a 'severe impairment' will not be found to be disabled.
> >
> > 3. An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.
> >
> > 4. If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' must be made.
> >
> > 5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

(citations and footnotes omitted).  A finding that a claimant "is disabled or not disabled at any

point in the five-step process is conclusive and terminates the . . . analysis." *Harrell*, 862 F.2d at 475.

### The Administrative Law Judge's Analysis in This Case

As stated above, Plaintiff's hearing before ALJ Brock occurred on October 19, 2011. After considering the testimony and medical records, the ALJ rendered her decision that Plaintiff was not disabled on October 28, 2011. [9] at 43-56. The ALJ first determined that Plaintiff meets the insured status requirements of the Social Security Act though December 31, 2015. At step one of the five-step evaluation process,[11] the ALJ found that Plaintiff had not engaged in any substantial gainful activity since July 28, 2010, the alleged onset date. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: chronic obstructive pulmonary disease and degenerative disc disease of the cervical spine.[12] [9] at 45-46.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. [9] at 46. Next, the ALJ assessed Plaintiff's Residual Functional Capacity ("RFC")[13] and found that she retains the capacity to

---

[11] The ALJ applied the five-step evaluation process set forth in 20 C.F.R. § 416.920(a).

[12] The ALJ determined that Plaintiff's alleged mental impairments were not severe. Plaintiff did not challenge this determination.

[13] "Residual functional capacity" is defined in the Regulations as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. § 416.945.

perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[14] with the additional limitations that she be limited to work that is free of respiratory irritants such as dust, smoke, fumes, and gases. In making this finding, the ALJ considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence and also considered opinion evidence.[15] [9] at 46.

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a police officer, which is medium in exertional demand with a specific vocational preparation ("SVP") level of six. [9] at 54. Finally, at step five, the ALJ concluded that Plaintiff could perform a significant number of jobs in the national economy. The ALJ based this conclusion on the testimony from the VE and Plaintiff's age, education, work experience, and RFC. These jobs included a booth cashier, an appointment clerk, and a maintenance dispatcher. Accordingly, the ALJ found that Plaintiff was not disabled. [9] at 55-56.

## The Issue

*The Commissioner objects to the Report and Recommendation and its recommendation that this case be remanded to the Commissioner for further administrative proceedings.*

The only issue objected to by either side in this case revolves around the testimony of the

---

[14] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

[15] 20 C.F.R. § 404.1529; SSRs 96-4p, 96-7p; 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 96-3p.

Vocational Expert (VE). The Administrative Law Judge (ALJ) found that the Plaintiff was "not disabled" . However, she did find that Plaintiff suffered from severe impairments including chronic obstructive pulmonary disease and degenerative disc disease of the cervical spine. She concluded that the combination of impairments from said medical conditions equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Following this determination, the ALJ assessed the residual functional capacity (RFC) of the Plaintiff and found that she retained the ability to perform sedentary work with additional limitations that the work be free of respiratory irritants such as dust, smoke, fumes and gases. She also found that Plaintiff could not perform her past relevant work as a police officer, but that she could perform a significant number of jobs in the national economy. This conclusion was based on the testimony from the VE and Plaintiff's age, education, work experience and RFC. The reply by the Plaintiff and the Report and Recommendation of Judge Parker turn on the fact that the Vocational Expert did not include the restrictions that the jobs that Plaintiff could do be free of respiratory irritants such as dust, smoke, fumes and gases.

There was no objection to the Magistrate Judge's affirming the ALJ's Opinion regarding the degree of disability and the limitations that Plaintiff remains under. Her capacity to perform sedentary work is not an issue in this Objection, but it is only the capacity to perform sedentary work with the additional restriction that she remain free of respiratory irritants such as dust, smoke, fumes and gases. In reviewing 20 C.F.R. pt. 404, subpt. P, app. 2, the Court looked to the applicable Table I which was *Residual Functional Capacity: Maximum sustained work capability limited to sedentary work as a result of severe medically determinable impairments*.

In going through the grid the Court went to Rule 201.19 which is for younger individuals (age 45-49), literate in English, a high school graduate with no skills that are transferable.  This is the condition of the Plaintiff and the grid states that the individual is not disabled.  If the analysis was to stop here, then the Objection would be well taken.  However, there were certain additional limitations found by the ALJ which were the requirement that Plaintiff's work allow her to be free of respiratory irritants such as dust, smoke, fumes and gases.  The VE did not qualify his opinion using these additional restrictions and hence Judge Parker's ruling and the source of the Objection.  In her Opinion, the ALJ found "transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that the Claimant is 'not disabled,' whether or not the Claimant has transferable job skills. (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2)." (Document 9, page 55)        The Report and Recommendation recommends that this case be remanded to the Social Security Administration for further development of the record regarding the availability of work.  This Court agrees with that recommendation and finds that the Objection to this portion is not well taken.  However, this is a very narrow issue and the Court finds that the remand of this case should be specifically limited to the issue of whether or not sedentary jobs exist in the national economy of sufficient number with the specific additional limitations that the jobs be free of respiratory irritants such as dust, smoke, fumes and gases.  This case is remanded for a determination of this very limited issue and nothing else.

## Conclusion

As required by 28 U.S.C. §636(b)(1) this Court has conducted an independent review of

the entire record and a *de novo* review of the matters raised by the Objection.  For the reasons set forth above, this Court concludes that Defendant's Objections are partially granted and partially overruled.  The Court further concludes that the proposed Report and Recommendation is an accurate statement of the facts and the correct analysis of the law in all regards except that the remand should be limited as stated above.  This Court accepts and approves all of the factual findings and legal conclusions contained in the Report and Recommendation.

      Accordingly, it is ordered that the United States Magistrate Judge Michael T. Parker's Report and Recommendation is accepted pursuant to 28 U.S.C. §636(b)(1) and that the Commissioner's Objection is not well taken, except as to the extent that the remand will be limited to the specific purpose above stated.  This case is remanded back to the Commissioner with the instructions herein.

      SO ORDERED this the 27th  day of September, 2013.

                                  *s/ Keith Starrett*
                            UNITED STATES DISTRICT JUDGE